**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVION O. HAYES,

Plaintiff, Case No. 2:24-cv-12212

v. Hon. Brandy R. McMillion
United States District Judge

MEDTRONIC, INC.,

Defendant.
_______________________________________/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 14)**

Plaintiff Davion O. Hayes ("Hayes") initiated this employment discrimination action against his former employer, Medtronic, Inc. ("Medtronic"), for claims of harassment, discrimination, retaliation, and hostile work environment pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Michigan Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* ("ELCRA"). *See* ECF No. 1. Before the Court is Medtronic's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a). *See* ECF No. 14. The Motion has been adequately briefed, and the Court can rule without requiring oral argument. *See* ECF Nos. 18, 19; E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Medtronic's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

**I.**

Medtronic is a medical device company that specializes in manufacturing and selling pacemakers and defibrillators through its Cardiac Rhythm Management ("CRM") unit. ECF No. 14, PageID.100. Hayes is an African American man who aspired to become a full-time CRM Sales Representative with Medtronic. *See generally* ECF No. 1.

On August 16, 2021, Medtronic hired Hayes as a CRM Field Sales Support Representative through its STEP trainee program. ECF No. 14, PageID.101. To be successful in the role, CRM Sales Representatives are required to have sufficient technical knowledge of Medtronic's product functions. *Id.* at PageID.100. Physicians who implant Medtronic's CRM devices into patients expect Medtronic field personnel to have a high level of understanding about cardiac rhythm management concepts and disease state, including understanding EKG reports, heart rhythms, and abnormalities. *Id.*; *see also* ECF No. 14-22, PageID.205.

While employed, Hayes's direct supervisor was CRM Senior District Manager Michael Palazzolo ("Palazzolo"). *See* ECF No. 14, PageID.101. Stephanie Munson ("Munson"), a Principal Employee Relations Partner, provided human resource support within the CRM Unit. *See* ECF No. 18-4, PageID.449. While in the field, Hayes met with customers, working under various field trainers or coaches, including Justin Sweet and Ashely Flemming ("Flemming"). *See* ECF No. 14-25;

ECF No.14-24, PageID.273. Hayes was the only black person on his CRM sales team. *See* ECF No. 18, PageID.418.

### A. Employment Training

To develop their technical knowledge, Medtronic requires newly hired prospective sales representatives to complete four levels of instruction and testing during a company-internal Sales Training Excellence Program ("STEP"). ECF No. 14, PageID.100. The STEP Program must be completed within a designated period. *See* ECF No. 14-3, PageID.134. Upon successful completion of the program, trainees become eligible for permanent sales positions with Medtronic. *See* ECF No. 14, PageID.101. Hayes's employment contract outlined targeted completion dates for each level of the STEP program, with all components to be completed by October 28, 2022. *See* ECF No. 14, PageID.102; ECF No. 14-3, PageID.134; ECF No. 18, PageID.411. An extension could be granted upon management approval. *See* ECF No. 14-13, PageID.133.

### B. "The Heart of the Matter"

The catalysis for this dispute began in 2022. On January 11, while on a site visit, Hayes had a conversation with Destiney Matthews ("Matthews"), a female hospital employee at St. Joseph's Mercy in Ypsilanti, Michigan. *See* ECF No. 14-23, PageID.231; ECF No. 14-36. Mark Hoenig, a Medtronic employee, reported that Hayes referred to Matthews as "little lady" and "fine wine." *See* ECF No. 14-

36. The day after, nurses at the facility stated they felt uncomfortable with Hayes. *Id.* Other Medtronic employees were also aware of the incident. *See, e.g.*, ECF No. 14-26, PageID.285. Hayes testified at his deposition that Justin Howell, another Medtronic employee, informed him that Palazzolo had been told that Hayes was making sexually inappropriate comments at "one of his hospitals." *See* ECF No. 14-23, PageID.231. Hayes disputes this. From February to March, various field trainers submitted complaints to Palazzolo regarding Hayes lack of knowledge, the need to "polish" his "articulation" and professional behavior while visiting clients, and his tardiness to meetings. *See e.g.*, ECF No. 14, PageID.102; ECF No. 14-25, PageID.279-281; ECF No. 14-36, PageID.352. Around this time, Hayes also failed his level 3 exam in the STEP program. *See* ECF No. 14, PageID.102.

On March 30, 2022, Fleming reported that Hayes was still struggling with his technical knowledge; and she characterized him as overconfident, often blurting out answers. *See* ECF No. 14, PageID.102. In April 2022, she reported to HR that during a customer site visit, Hayes inappropriately said to her "Hey, Babe, how 'ya doin." *See* ECF No. 14-24, PageID.273. However, she acknowledged that this was the only instance of this happening. *Id.* In response to the various reports, on April 13, Palazzolo and District Service Manager Marybeth Knoth ("Knoth") met with Hayes to discuss his progress and offer suggestions on how he could improve. *See* ECF No. 14, PageID.103; ECF No. 18, PageID.417, 429. According to Hayes,

Palazzolo informed him that he should meet with Adrian Gentry, a Black employee in Houston, because "he thought they were 'similar.'" *See* ECF No. 18, PageID.417. The following day, Palazzolo emailed Hayes, documenting their conversation, and expressing concern about Hayes's engagement and understanding of his role. *See* ECF No. 14, PageID.103; ECF No. 14-29.

**C. Request for Reassignment & Performance Review**

Shortly thereafter, two more complaints were made against Hayes concerning his behavior toward Ashley Fleming and Kristina Otto. *See* ECF No. 14-23, PageID.237, 239. Following the complaints, Hayes had a one-on-one conversation with Palazzolo and requested to be moved from working with Ashley. *See* ECF No. 18-5, PageID.491. In an April 27, 2022 email directed to Hayes, Palazzolo recapped the conversation, and acknowledged that the reported inappropriate comment relating to Matthews at St Jospeh Mercy Hospital originated from Flemming and another "competitive rep," both of whom "heard what they thought was an unprofessional or inappropriate greeting and [Matthews] was not sure how to respond." *See* ECF No. 18-5, PageID.491. Palazzolo continued, stating

> "[w]e discussed how not everyone is comfortable addressing things in the moment even though that would have been the best way to handle this matter and clear the air quickly. I understand this experience did not leave you with the best feeling but I would ask that you remain committed to giving it another go with Ashely, Kristi and others on the Saginaw team 1-2 days per week."

*See id.* Hayes continued to work with Flemming.

Two days later, on April 29, Palazzolo completed his portion of Hayes' annual performance review, documenting that Hayes was not meeting expectations or taking advantage of the resources provided. *See* ECF No. 14-9. Palazzolo expressed that Hayes needed to make sure he passed the remainder of his technical training modules and meet the expectations set out before him. *Id.* at PageID.156.

**D. Hayes Formal Complaint**

In May 2022, Hayes passed his level 3 exam after a retake. Palazzolo congratulated him and set expectations moving forward. *See* ECF No. 14, PageID.104-105; ECF No. 18, PageID.413. Around that same time, Hayes contacted Munson about the false harassment allegations and made a formal complaint to HR. *See* ECF No. 14-21, PageID.202; ECF No. 18-4, PageID.450. Along with his complaint to Munson, Hayes submitted a statement from Matthews, disclaiming the sexual harassment allegations. *See* ECF No. 14-27; ECF No. 14-34, PageID.340.

Issues continued to arise with Hayes, including complaints relating to his attire and further complaints about his lack of technical knowledge. *See* ECF No. 14, PageID.102, 105; ECF No. 14-6, PageID.144; ECF No. 14-25, PageID.282. Six of Hayes colleagues shared concerns about Hayes's behavior and work performance, while also bringing up the sexual harassment allegations. *See* ECF No. 14, PageID.106-107. In June, Munson asked Peter Boguski to conduct an internal

investigation into the sexual harassment allegations against Hayes. *See* ECF No. 14-30, PageID.298. The results of that investigation proved none of those allegations to be fruitful. *See* ECF No. 14-34, PageID.339.

Around July 2022, Palazzolo meet with Hayes for his annual performance review, and formally placed him on notice that he was not meeting expectations. *See* ECF No. 14-10, PageID.158-159; ECF No. 14-23, PageID.248. Hayes acknowledged the review and submitted comments disputing the allegations. *See* ECF No. 14, PageID.107. The emails continued between Palazzolo, Hayes and his field coaches regarding his behavior, while highlighting expectations for weekly reports. *See, e.g.*, ECF No. 14-5, PageID.140; ECF No. 14-11, PageID.161-162; ECF No. 14-12, PageID.164.

**E. Level 4 Exam, Final Warning & Termination**

After several colleagues expressed concerns about Hayes's technical knowledge, Palazzolo extended Hayes level 4 exam window from August 22 to September 26, 2022. *See* ECF No. 14, PageID.109; ECF No. 14-13, PageID.166. However, on August 26, 2022, Palazzolo issued Hayes a final written warning and informed him that he must pass all remaining tests and training requirements or his employment would be terminated. *Id.*; ECF No. 14-14. A few days later, Flemming emailed Palazzolo with the same concerns previously expressed. *See* ECF No. 14-12, PageID.164. Shortly after, she emailed both Palazzolo and Knoth notifying them

that she could no longer work with Hayes. *See* ECF No. 14-16, PageID.178. Other field representatives expressed the same or similar concerns, which made it difficult for Palazzolo and Munson to find a new region for Hayes to work. *See* ECF No. 14-18, PageID.182-183.

On October 6, Palazzolo informed Hayes that he was being terminated. *See* ECF No. 14-32, PageID.305. On October 7, Hayes received information that he did not pass his level 4 exam. *See* ECF No. 14-19, PageID.185. Hayes's failure of the level 4 exam, coupled with the behavioral complaints, led to the decision to terminate Hayes. *See* ECF No. 14-22, PageID.207. On October 13, Palazzolo and Munson notified Hayes that while his training and employment would end immediately, it would not be official until November 1, 2022. *Id.*

**F. Procedural History**

As a result of his termination, Hayes commenced this action against Medtronic on August 22, 2024. ECF No. 1. Hayes seeks relief for: racial discrimination and retaliation on the basis of race in violation of Title VII (Count I), retaliation in violation of Title VII (Count II), racial discrimination in violation of ELCRA (Count III), retaliation in violation of ELCRA (Count IV), hostile work environment in violation of ELCRA (Count V), and wrongful discharge in violation of Michigan public policy (Count VI). *Id.* Medtronic filed the instant Motion for Summary Judgment on all claims against it. *See* ECF No. 14. The Motion is fully

briefed, with a sufficient record before the Court; therefore, oral argument is unnecessary to reach disposition. *See* ECF Nos. 18, 19; E.D. Mich. LR 7.1(f).

**II.**

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating the motion, the Court must determine "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"To survive summary judgment, the nonmoving party 'must present significant probative evidence' putting the material facts in doubt." *Walden v. GE Int'l, Inc.*, 119 F.4th 1049, 1057 (6th Cir. 2024) (quoting *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir. 2023)). The "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence

of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252.

When evaluating discrimination and retaliation claims at summary judgment, parties can rely on direct or indirect evidence. When indirect evidence is chosen, the Court applies the *McDonnell-Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Redlin v. Gross Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606-07, 613 (6th Cir. 2019) (citations omitted); *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 908 (6th Cir. 2009) ("ELCRA plaintiff also may rely on the indirect, burden-shifting approach sanctioned in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."). Under this framework, Hayes must first establish a *prima facie* case of the claim. *See George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). If the *prima facie* case is shown, the burden then shifts to Medtronic to "articulate some legitimate, non-discriminatory or retaliatory reason for their actions." *George*, 966 F.3d at 459. If satisfied, the burden then shifts back to Hayes to show the articulated reason is pretextual. *Laster*, 746 F.3d at 730.

"Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.* (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). And the Court's duty is to "not allow 'this burden-shifting analysis to obfuscate the appropriate question—whether there exists

a genuine issue of material fact.'" *See Jackson v. VHS Detroit Receiving Hops., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) ("*VHS Detroit*") (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

**III.**

Medtronic moves for summary judgment arguing that Hayes fails to make a *prima facie* case for discrimination or retaliation under Title VII and ELCRA; his hostile work environment claim fails because he did not suffer from harassment; and there are no public policy exceptions that would allow his wrongful discharge claim to proceed. *See generally* ECF No. 14. The Court will address each issue in turn.

**A. RACIAL DISCRIMINATION**

Under Count I and III, Haynes alleges he was terminated because of his race, in violation of Title VII and ELCRA. *See* ECF No. 1, PageID.4-6, PageID.7-9. Title VII and ELCRA prohibit employers from discriminating or discharging an employee on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)-(c); MICH. COMP. LAWS § 37.2202(1)(a). Racial discrimination claims under ELCRA and Title VII are reviewed and analyzed under the same legal standard.[1]

[1] The Courts notes one slight difference. For a claim of race discrimination under ELCRA, Williams must prove "but for causation or causation in fact." *See Minner v. Gen. Motors, LLC*, No. 363462, 2024 WL 2868657, at *5 (Mich. Ct. App. June 6, 2024) (citing *Hecht v. Nat'l Heritage Acads., Inc.*, 886 N.W.2d 135, 146 (Mich. 2016)). However, because causation is not dispositive of the issues before the Court, this distinction does not affect the Court's analysis or opinion.

*See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771-72 (6th Cir. 2018); *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999). Since Hayes relies on circumstantial evidence, the Court will follow the *McDonnell-Douglas* framework to evaluate his discrimination claim.[2]

To begin, the Court looks first to whether Hayes has established a *prima facie* discrimination claim under Title VII and ELCRA. *See Palmer v. Scripps Media, Inc.*, 823 F. Supp. 3d 739, 750-51 (E.D. Mich. 2026). To establish a *prima facie* case of racial discrimination, Hayes must prove that he (1) was a member of a protected class, (2) was qualified for the job and performed it satisfactorily, (3) suffered an adverse employment action despite qualifications and performance, and (4) was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. *Laster*, 746 F.3d at 727. In this case, the parties are in dispute over elements #2 and #4.

***1. Qualfied for the Position***

Medtronic first argues that Hayes was not qualified for the position, pointing to his failure to meet performance standards, his unprofessional behavior, and his

[2] Plaintiff argues that the "*McDonnell Douglas* Burden-Shifting Framework is Not a Substantive Legal Standard." *See* ECF No. 18, PageID.420. Ironically, he relies on a dissenting opinion from Justice Thomas (*Hittle v Stockton*, 145 S. Ct. 759, 761-62 (Mar. 10, 2025)) and a Seventh Circuit case (*McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360 (7th Cir. 2019)) – neither of which are binding authority – to suggest that this Court should ignore this well settled framework in analyzing whether Plaintiff can establish a *prima facie* case of discrimination before the burden shifts to Defendant to offer a non-discriminatory reason for Plaintiff's termination. This Court will not disregard the well-established burden shifting framework to determine if Plaintiff's discrimination and retaliation claims can survive summary judgment.

lack of technical acumen. *See* ECF No. 14, PageID.114. Hayes disputes this, arguing that those allegations related to the time period after Hayes was hired for the training program and do not go to his qualifications. *See* ECF No. 18, PageID.423. He asserts that the Court cannot conflate poor performance allegations with his qualifications for the position. *See* ECF No. 18, PageID.422-423 (citing *Wexler v White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) and *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000)). The Court agrees. Since Medtronic hired Hayes for a training program, it's fair to say, viewing the facts in the light most favorable to Hayes, that a reasonable jury could find that he was qualified for the job; and that his later performance did not discount his qualifications.

***2. Similarly Situated Comparator***

Even if Hayes was qualified for the position, Medtronic also argues that his racial discrimination claims fail because he cannot show a similarly situated comparator was treated more favorably. *See* ECF No. 14, PageID.114-115.

The Sixth Circuit has established three factors, known as the *Mitchell* factors, to aid in determining whether employees are "similarly situated" on allegations of differential disciplinary action:

> … [T]he individuals with whom the plaintiff seeks to compare his/her treatment must have (1) dealt with the same supervisor, (2) have been subject to the same standards and (3) have engaged in the same conduct

> without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*See VHS Detroit*, 814 F.3d at 777 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). The weight given to each varies case by case. *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). The Court also notes that a finding of a comparator is not a rigid checklist but should be evaluated based on the totality of all *relevant* aspects. *Compare Bobo v. United Parcel Serv.*, 665 F.3d 741, 751-53 (6th Cir. 2012) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 352 (6th Cir. 1998)), *with Blount v. Stanley Eng. Fastening*, 55 F.4th 504, 511-12 (6th Cir. 2022).

Here, despite Hayes argument that he need not identify a similarly situated comparator[3], he states that Bob Murray ("Murray"), a fellow CRM trainee in his same cohort, satisfies the similarly situated comparator requirement. Hayes asserts Murray was allowed to "[sign] off and complete the program on March 1, 2023, two and half months later[,]" *see* ECF No. 18, PageID.426 (citing ECF No. 18-1), despite having the same September 26, 2022 completion date as Hayes, *see* ECF No. 14-23, PageID.256. Hayes asserts this extension shows an inference of discrimination because Murray was treated differently. The Court disagrees.

[3] Contrary to Hayes's argument, an inference of discrimination is not sufficient to satisfy the similarly situated comparator requirement when there is not any similar conduct between the comparator and the plaintiff. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 893-94 (6th Cir. 2020).

While Murray falls into the category of a nonprotected employee, he is not, however, "similar in all relevant aspects" because the timing of testing completion was not sole reason leading to Hayes termination. *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 352 (6th Cir. 1998)). The Court is required to look to see if Murray not only failed testing requirements, but also whether he had complaints of unprofessional behavior, tardiness, and performance issues. And the record is void of any evidence that Murray faced any of those additional issues.

In viewing the totality of the record, Hayes fails to establish how Murray is a similarly situated comparator. Even assuming *arguendo* that Hayes is granted an inference of discrimination, one singular text message from Murray, without any supporting information, is insufficient for a reasonable jury to conclude Murray was treated more favorable under similar conditions. *See* ECF No. 18-1, PageID.437. While Hayes and Murray may have been subject to different testing windows, the record before the Court fails to establish Murray's conduct was similar in kind, severity, or of comparable seriousness. *See* ECF No. 18, PageID.425 (citing *Bobo v. United Parcel Serv.*, 665 F.3d 741 (6th Cir. 2012)). Thus, the Court concludes that no reasonable jury would find that a similarly situated non-protected employee was treated more favorably than Hayes, as required to make a *prima facie* case of

discrimination. Consequently, Hayes has not met his burden of proving a *prima facie* case for race discrimination. The Court, therefore, grants summary judgment in favor of Medtronic on Count I (to the extent it concerns racial discrimination) and Count III.

**B. RETALIATION**

Under Counts I, II, and IV, Hayes also seeks relief for retaliation because he reported circumstances of discriminatory conduct and was subsequently fired. *See* ECF No. 1, PageID.6, 9. Medtronic seeks summary judgement on all three counts, arguing Hayes cannot establish a *prime facie* case because (1) he lacks sufficient evidence of engagement in a protected activity, and (2) even so, that activity was not the cause of his eventual termination. *See* ECF No. 14, PageID.116.[4]

Generally, the analysis is the same for retaliation claims under Title VII and ELCRA. *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018). To make a *prima facie* showing of retaliation, Hayes must show "(1) he . . . engaged in protected activity, (2) [Medtronic] knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against [Hayes], and (4) there was a causal connection between the protected activity and the adverse employment

[4] Hayes is proceeding under the circumstantial evidence, so the Court's analysis will likewise follow the *McDonnell-Douglas* framework. This means that once Hayes establishes a *prima facie* case, the burden of production shifts to Medtronic to "articulate some legitimate, non-discriminatory or retaliatory reason for their actions." *George*, 966 F.3d at 459. If satisfied, the burden then shifts back to Hayes to show that the articulated reason is pretextual. *Laster*, 746 F.3d at 730.

action." *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015) (citing *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)) (alternation in original); *see also El-Khalil v. Oakwood Healthcare, Inc.*, 934 N.W.2d 665, 670-71 (Mich. 2019) (per curiam). Hayes faces a low burden at this juncture. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). If reasonable minds could differ as to whether a *prima facie* case is established by a preponderance of the evidence, summary judgment is not appropriate. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 (1993).

***1. Protected Activity***

Hayes alleges he engaged in a protected activity when he made a formal complaint to his human resources personnel, Munson, in May 2022. *See* ECF No. 18, PageID.428. In Medtronic's view, Hayes's complaint to Munson does not satisfy the protected activity requirement because none of his communications with Munson contained any allegations of racial discrimination. *See* ECF No. 14, PageID.116-117. The Court agrees.

Title VII and ELCRA protection for complaints made to supervisors, human resources personnel, or any other decision maker "need not be lodged with absolute formality, clarity, or precision." *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015); *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008). Nor are the complaints required to oppose actual violations of

Title VII. *See Graf v. Morristown-Hamblen Hospital Assoc.*, 155 F.4th 578, 589 (6th Cir. 2025). Rather, a plaintiff must show that he took an overt stand against suspected illegal discriminatory action for any complaint to qualify as a protected activity. *See Crisp v. Scioto Ambulance District*, 807 F. Supp. 3d 792, 797 (S.D. Ohio 2025) (citing *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020)). In doing so, the plaintiff must also have had a reasonable and good faith belief that the acts reported were Title VII violations. *See Graf*, 155 F.4th at 589 (citing *Jackson v. Genessee Cnty. Rd. Comm'n*, 999 F.3d 333, 346 (6th Cir. 2021)).

Even when viewing the evidence in the light most favorable to Hayes, he fails to meet this burden. Hayes alleges he made a complaint to Munson, his human resources personnel, concerning his employment with Medtronic. *See* ECF No. 14-23, PageID.264; ECF No. 18-4, PageID.449-450. He reported that "he felt he was being subjected to a pattern of false sexual harassment allegations as a part of a plot to place his job in jeopardy." *See* ECF No. 18, PageID.428. However, Hayes complaint to Munson concerned sexual harassment allegations and did not include any allegations relating to racial discrimination or any inference that the sexual harassment allegations were racially tinged.

Based on the record, a reasonable jury would not find a complaint regarding sexual harassment equivalent to an *overt stand* against suspected illegal **racial discriminatory** action. *See, e.g.*, *Crisp*, 807 F. Supp. 3d at 797. Hayes's argues that

he told Munson that he was being "Emmett Tilled[,]" *see* ECF No. 18, PageID.431, to suggest that complaints were racial in nature. However, the Court finds this insufficient to satisfy a complaint of racial discrimination because he acknowledges that Munson did not even know what it meant. *See* ECF No. 14-21; ECF No. 18-4. Moreover, they were *his* statements, not Munson's or any other decision maker at Medtronic. Suffice it to say, Hayes's characterization of being "Emmett Tilled," without context, does not equate to knowledge of discriminatory activity. And nothing is included in Hayes's formal complaint and email to Munson regarding race. *See* ECF No. 14-23, PageID.237-238.

The same holds true for the comment regarding Medtronic operating like the "50s and 60s." Hayes alleges that Palazzolo and Knoth told him he had to be careful because "Medtronic is like the 1950s and '60s" and Palazzolo went on to state that it was "more like the 20s." ECF No. 14-23, PageID.236. But the context of this conversation was unclear. Hayes admitted that he "didn't understand it at the time" and he ***now*** takes it to mean that Palazzolo told him he had to do something and Hayes was required to listen because Palazzolo was white and Hayes was black. *Id.* But Hayes's later thoughts about what that comment could have meant, when the statement did not reference race or racial discrimination, are insufficient to establish a protected activity.

The Court finds that Hayes fails to establish a *prima facie* case of retaliation because he has not presented sufficient evidence for a reasonable jury to find that he engaged in the protected activity of reporting racial discrimination.

***2. Causal Connection***

Even if Hayes's protected activity was sufficient, his claims still fail because a causal connection does not exist between his formal report to Munson and his termination. While the burden for causation is minimal, it still requires Hayes to show "'some evidence to deduce a causal connection' between the adverse action and the protected activity." *See Gray v. State Farm Mut. Auto. Ins. Co.*, 159 F.4th 1024, 1033 (6th Cir. 2025) (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009); *A.C. ex rel J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013)). Further, when "some time elapses between" the employer's awareness "of a protected activity and the subsequent adverse employment action, the employee must couple temporal, proximity with other evidence of retaliatory conduct to establish causality." *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 588 (6th Cir. 2022) (quotation marks and citation omitted).

Here, no reasonable jury could find that Hayes's complaint to Munson regarding the sexual harassment allegations against him played a significant factor leading to his termination. This is especially true when he had performance issues and unprofessional behavior after the alleged formal complaint and before his

termination. *See* ECF No. 14, PageID.118; ECF No. 19, PageID.497. Contrary to Hayes's assertion, *see* ECF No. 18, PageID.430, multiple incidents occurred during the four months of time that passed in between Hayes' formal complaint and termination. *See, e.g.*, ECF No. 14-6, PageID.144 (noting communication and punctuality issues); ECF No. 14-7, PageID.147 (same); ECF No. 14-25, PageID.282 (noting dress code and inappropriate professional behavior around clients); ECF No. 14-15 (customer complaints about performance); ECF No. 14-17, PageID.180 (noting issues with professionalism and self-awareness); ECF No. 14-19, PageID.185 (failed Level 4 assessment). Hayes was also repeatedly informed to take various corrective actions, to no avail. *See* ECF No. 14-17.

On the record before the Court, significant time elapsed between Hayes's alleged reporting of racial discrimination (which occurred on May 18, 2022) and his termination (which occurred on October 13, 2022). *See* ECF No. 18, PageID,428; ECF No. 14, PageID.111. And Hayes fails to "couple [the] temporal, proximity with other evidence of retaliatory conduct to establish causality." *Bledsoe*, 42 F.4th at 588. To the contrary, the record evidence shows a multitude of non-retaliatory conduct, including customer complaints, performance issues, tardiness, unprofessional behavior and a failed final assessment – all of which negate a finding of causality.

Thus, because Hayes failed to engage in a protected activity under Title VII and ELCRA, and even if he did, the record is void of evidence to support it was the cause of his termination, summary judgment in favor of Medtronic on the retaliation claims (Counts I, II, and IV) is appropriate.

## C. HOSTLE WORK ENVIRONMENT

Under Count V, Hayes alleges he was subjected to a hostile work environment because a reasonable person would find Medtronic's conduct regarding the unfounded sexual harassment allegation created an untenable situation that led to his termination. *See* ECF No. 1, PageID.11. Even if true, his hostile work environment claim fails because he asserts he was subjected to a hostile work environment based on race. *See* ECF No. 18, PageID.431 ("Plaintiff has established a claim for hostile work environment based on race.")

To prevail on a hostile work environment claim based on race under Title VII or ELCRA, Hayes must prove that (1) he belongs to a protected class, (2) was subject to unwelcomed harassment, (3) that was based on race, (4) affecting a term, condition, privilege of employment, and (5) the defendant knew or should have known about the harassment and failed to take action. *See Khalaf*, 973 F.3d at 482 (citing *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017)); *Quinto v. Cross & Peters Co.*, 547 N.W.2d 314, 319-20 (Mich. 1996).

Courts are instructed to look at the totality of the alleged harassment to determine whether it was "sufficiently severe or pervasive to alter the conditions of

the plaintiff's employment and create an abusive working environment." *See Khalaf*, 973 F.3d at 482 (citing *Phillips*, 854 F.3d at 327). "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing….and conduct which a reasonable person in the plaintiffs' position would find severely hostile or abusive." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).

Medtronic argues that Hayes cannot establish that he "suffered any harassment – much less any alleged harassment based on race." *See* ECF No. 14, PageID.120. Medtronic states that "Hayes has not identified specific harassment – because there was none." *Id.* Hayes states that "keeping [him] with people [Medtronic says he was] making sexual advances with, [] is hostile by itself." *Id.* (citing ECF No. 14-23); *see also* ECF No. 18, PageID.432. Again, while that may be true, there is no record evidence that was based on race; and thus, no evidence for a reasonable jury to even infer that Medtronic's failure to move Hayes away from Fleming was racially motivated.

Moreover, the record is insufficient to support Hayes's assertion that "Michael Palazzolo and Marybeth Knoth made racially offensive comments that caused [him] to feel excluded as an African-American." ECF No. 18, PageID.432. As discussed *supra* (*see* Section III.B.1), the Emitt Till comment originated from Hayes, not Munson, and Palazzolo and Knoth's comments about the 50s, 60s, and 20s are not

racially tinged. Even if the Court were to consider Palazzolo's comment "you're not one of us" to be racially motivated, that sole comment alone is not enough to establish harassment that would have "affected a term, condition, or privilege of employment." *See* ECF No. 18, PageID.416; ECF No. 14, PageID.120; *see also Phillips,* 854 F.3d at 327. That comment was an isolated incident that does not rise to the level of being extremely serious to conclude that Hayes was subject to a hostile work environment. *See Palmer*, 823 F. Supp. 3d at 760 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

Evaluating the totality of the circumstances with the record presented before the Court, no reasonable jury could find that Hayes was subjected to a hostile work environment. Because Hayes fails to establish a *prima facie* case for a hostile work environment claim, the Court finds summary judgement appropriate in favor of Medtronic on Count V.

**E. WRONGFUL DISCHARGE**

Finally, under Count VI, Hayes alleges he was wrongfully discharged for attempting to report his alleged racially charged hostile work environment in violation of Michigan public policy. *See* ECF No. 1, PageID.12. Medtronic seeks summary judgement on Hayes's wrongful discharge claim because he "has not engaged in protected activity that falls within one of the three well-established

exceptions" to Michigan's at-will employment doctrine. *See* ECF No. 14, PageID.121.

Michigan is an "at-will" termination state, allowing employers to fire employees "for any reason or no reason at all" unless the termination violates public policy. *See Jackson v. Genessee Cnty. Road Comm'n*, 999 F.3d 333, 353 (6th Cir. 2021). Under Michigan law, at-will termination violates public policy, and is subject to exception if the employee is discharged either (1) in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) for the failure or refusal to violate the law in the course of employment; or (3) for exercising a right conferred by a well-established legislative enactment. *See Kellar v. Yunion, Inc.*, 157 F.4th 855, 882 (6th Cir. 2025) (citation omitted); *accord McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (Mich. 2009). Here, Haye's claims fail as a matter of law because he did not engage in a protected activity that would satisfy any of these exceptions.

Hayes's further argues, without support, that Michigan law allows public policy claims that are not coextensive with his ELCRA claim. *See* ECF No. 18, PageID.433. The Court finds this argument unavailing because his claims are innately coextensive with his ELCRA claims. Therefore, the Court finds summary judgement in favor of Medtronic appropriate as to Count VI.

**IV.**

Accordingly, Hayes failed to establish a *prima facie* case for racial discrimination, retaliation, and a hostile work environment under Title VII and ELCRA. Therefore, summary judgment is **GRANTED** in favor of Medtronic as to Counts I, II, III, IV, and V. Likewise, Hayes fails to engage in a protected activity that is not coextensive with his ELCRA claims, and his claims are not subject to any of the three exceptions to maintain a wrongful discharge claim under Michigan law. Consequently, summary judgment is **GRANTED** in favor of Medtronic on Count VI.

For these reasons, Medtronic's Motion for Summary Judgment (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

***This is a final order that closes this case.***

**IT IS SO ORDERED.**

Dated: September 11, 2026
Detroit, Michigan

s/Brandy R. McMillion
HON. BRANDY R. MCMILLION
United States District Judge